THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RYAN HARNEY,

                                    Plaintiff,

        v.

BLC FEDERAL WAY LH, LLC,

                                    Defendant.

CASE NO. C24-1844-JCC

ORDER

 

        This matter comes before the Court on Defendant BLC Federal Way LH, LLC's motion to compel arbitration (Dkt. No. 11). Having considered the briefing and the relevant record, the Court finds oral argument unnecessary and GRANTS Defendant's motion for the reasons explained herein.

## I.    BACKGROUND

        Plaintiff Ryan Harney alleges, in his representative capacity, that his mother ("P.H."), a vulnerable adult, was twice sexually assaulted at Defendant's residential care facility. (Dkt. No. 1-2 at 2–5.) Defendant has not answered Plaintiff's allegations. The only issue presently before the Court is whether Mr. Harney can be compelled to arbitrate P.H.'s resulting claims. (*See generally* Dkt. No. 11.)

        It is undisputed that P.H. delegated powers of attorney in 2018. (Dkt. No. 12 at 27–43.)

One instrument designated Mark Liggett, P.H.'s brother, as her principal agent and guardian.[1] (*Id.* at 27.) Another designated Mr. Harney, her son, as P.H.'s agent for health care decisions. (*Id.* at 36.) Specifically, P.H. delegated to Mr. Harney the power to "make all necessary arrangements for me at any hospice, nursing home, convalescent home, or similar facility and to assure that provision is made for all my needs." (*Id.* at 41.) In addition, P.H. authorized Mr. Harney "to sign, execute, deliver, and acknowledge any contract or other document that may be necessary, desirable, convenient, or proper in order to exercise any of the powers described in this document." (*Id.* at 42.)

Pursuant to his authority, Mr. Harney helped P.H. enter Defendant's living facility in 2022. (Dkt. No. 17 at 4.) Mr. Harney signed paperwork as P.H.'s "legal representative," including an optional arbitration agreement. (Dkt. No. 12 at 16.) This document is entitled, "**AGREEMENT TO ARBITRATE DISPUTES (<u>OPTIONAL</u> FOR RESIDENT AND COMMUNITY)**." (*Id.* at 15) (emphasis original). The one-page agreement repeats, "**<u>The execution of this Arbitration Agreement is voluntary and not a precondition to receiving medical treatment or for admission to the Community.</u>**" (*Id.*) (emphasis original). Either party could rescind the agreement within 15 days. (*Id.*) It further states that "any dispute" will be submitted to arbitration, except actions for involuntary transfer, discharge, or eviction. (*Id.*)

Defendant now moves to compel arbitration. (*See generally* Dkt. No. 11.) Mr. Harney opposes, arguing that he was not authorized to bind P.H. to the arbitration agreement or, in the alternative, that the agreement was unconscionable on multiple grounds. (Dkt. No. 15 at 5–17.) The Court considers the standards governing arbitration agreements before turning to Mr. Harney's arguments.

## II.    DISCUSSION

### A.    Legal Standard

The Federal Arbitration Act ("FAA") creates a strong preference in favor of arbitration.

---

[1] That authority has since passed to Mr. Harney. (*See* Dkt. No. 17 at 30.)

1  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2); *see also*

2  *Adler v. Fred Lind Manor*, 103 P.3d 773, 779 (Wash. 2004) (same in Washington state). Under

3  the statute, the Court's role is limited to determining (1) whether an enforceable arbitration

4  agreement exists between the parties and (2) if it encompasses the dispute. *See* 9 U.S.C. § 4;

5  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If a defendant

6  invokes an arbitration agreement, it is the plaintiff's burden to show that the dispute is unsuitable

7  for arbitration on one or both of these grounds. *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1091

8  (9th Cir. 2018).

9       Mr. Harney's arguments primarily challenge the validity and the enforceability of the

10  arbitration agreement,[2] (*see* Dkt. No. 15 at 5–17), which are matters of state contract law (here,

11  that of Washington). *See* 9 U.S.C. § 2.

12      **B.**    **Power of Attorney**

13       Mr. Harney contends the agreement is invalid because he did not have the authority to

14  enter it on P.H.'s behalf. (*Id.* at 5.) Instead, he suggests that power was Mark Liggett's alone.

15  (*Id.*) This argument is not well-taken. As Mr. Harney submits, "[t]he power of attorney is a

16  written instrument by which one person, as principal, appoints another as agent . . . for the

17  purposes set forth in the instrument." (*Id.*) (citing *Arcweld Mfg. Co. v. Burney*, 121 P.2d 350, 354

18  (Wash. 1942)). Nothing limits a person's ability to create multiple powers of attorney, as P.H.

19  did here. *Cf. Testa Testa v. Emeritus Corp.*, 168 F. Supp. 3d 1103, 1006 (N.D. Ill. 2016)

20  (discussing multiple powers of attorney). Mark Liggett was designated as a principal with a

21  general power of attorney. So, too, was Mr. Harney, at least for the purposes of medical

22  treatment. Mr. Liggett's power of attorney does not negate Mr. Harney's. The instrument

23

24  ─────────────────────

  [2] Mr. Harney also argues that the agreement does not cover all his claims, (Dkt. No. 15 at 6–7),
but this is based on an incorrect reading of the agreement. While it lists some examples of

25  arbitrable claims—"*including* any action for injury or death arising from negligence"—
ultimately "*any* dispute" is covered by the agreement save for three excluded actions. (Dkt. No.

26  12 at 15) (emphases added).

designating Mr. Harney included the authority to arrange residential care at a facility like Defendant's. More specifically, Mr. Harney was "authorized to sign . . . *any* contract," even those simply "*convenient*," for that purpose. (Dkt. No. 12 at 42) (emphases added). The arbitration agreement here is a contract entered when P.H. was admitted to Defendant's facility. It was at least convenient to that purpose. Therefore, pursuant to P.H.'s valid designation, Mr. Harney had authority to form a valid arbitration agreement on her behalf.[3]

## C. The Agreement's Unconscionability

Mr. Harney also contends that the arbitration agreement is unconscionable. Unconscionability comes in two flavors: procedural and substantive. *Adler*, 103 P.3d at 781. An agreement is procedurally unconscionable when one party lacks a meaningful choice. *Id.* Contracts of adhesion or terms buried in fine print may be procedurally deficient. *Id.* at 782–83. An agreement is substantively unconscionable when the terms themselves shock the conscience. *Id.* at 781. A decade ago, a court found that a similar resident care facility's arbitration agreement was unconscionable. *See Brookdale Senior Living Cmtys., Inc. v. Hardy*, 2015 WL 13446704, slip op. at 6 (W.D. Wash. 2015). But the agreement here is substantively different. That being said, the Court does find certain terms within the agreement to be substantively unconscionable and must be severed, as described below.

### 1. Procedural Unconscionability

In *Hardy*, the plaintiff argued that he had insufficient time to consider an arbitration agreement, after his mother was found wandering outside at night. 2015 WL 13446704, slip op. at 3. Still, the court found that the terms were not hidden or obscured, and the choice was sufficiently clear. *Id.* at 3. The same is true here: the separate arbitration agreement is short, clear, and even uses bold, capitalized font to emphasize key information. Most importantly, it

---

[3] A valid arbitration agreement can bind a party to arbitrate a dispute with a residential care provider. *See Estate of Eckstein ex rel. Luckey v. Life Care Ctrs. of Am., Inc.*, 623 F. Supp. 2d 1235, 1236–41 (E.D. Wash. 2009) (compelling arbitration in a wrongful death suit).

emphasizes that the agreement was *optional*. It cannot be said that Mr. Harney lacked a sufficient choice when he could decline to sign. *See Eckstein*, 623 F. Supp. 2d at 1237 (voluntary arbitration agreement). He even could have rescinded the agreement unilaterally within 15 days. The evidence before the Court indicates that Mr. Harney had sufficient authority, information, and choice before agreeing to arbitrate on his mother's behalf. Therefore, the agreement is not procedurally unconscionable.

### 2. Substantive Unconscionability

Because the substance of an agreement turns on its terms, the Court must consider those Mr. Harney now challenges. To note, courts usually sever unconscionable terms from the agreement unless these defects pervade and defeat the agreement in its entirety. *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199–1200 (Wash. 2013). When that occurs, the remaining contract may be enforced. *Id.* In *Hardy*, the court found that four key terms were unconscionable and at least two more may have been unenforceable. 2015 WL 13446704, slip op. at 6. These terms included cost and fee provisions, actions excluded from arbitration, confidentiality requirements, limitations on discovery, waiver of appeal, and a damages limit. *Id.* at 3–5. These deficiencies could not be severed because they were pervasive and therefore the court refused to compel arbitration. *Id.* at 7. As detailed below, the agreement here has fewer and less pervasive defects than in *Hardy*.

Mr. Harney argues that seven terms here are unconscionable. (Dkt. No. 15 at 9–17.) As to several, his arguments fail to comprehend the terms' language[4] or lack authority.[5] The remaining

---

[4] Although the agreement does not provide for discovery or appeals, (Dkt. No. 15 at 11, 17), it does not create any limits on either, and Defendant disclaims any attempt to limit discovery or prohibit appeals. (*See* Dkt. No. 21 at 7, 9) (*cf. Hardy*, 2015 WL 13446704, slip op. at 4–5) (agreement limited parties to depositions of expert witnesses and waived right to appeal).

[5] Although the agreement specifies that arbitration will be conducted according to the FAA, (Dkt. No. 12 at 15), Mr. Harney argues that the FAA does not contain sufficient procedures. (Dkt. No. 15 at 10.) But he does not direct the Court to the FAA itself or any other authority for this proposition.

1    terms he points to pertain to the following: (a) costs and fees, (b) actions excluded from

2    arbitration, and (c) confidentiality. As discussed below, the final two are unconscionable and

3    must be severed. But the remaining agreement is enforceable, thus requiring arbitration.

4        Mr. Harney first says that the agreement shifts litigation costs on him and does not

5    provide for fee awards. (Dkt. No. 15 at 9.) When a plaintiff argues that arbitration will be

6    financially unbearable, it is their burden to demonstrate that likelihood. *Zuver v. Airtouch*

7    *Comms., Inc.*, 103 P.3d 753, 762 (Wash. 2004). Mr. Harney has not met his burden. For one,

8    arbitration costs are purely speculative at this point. *See Eckstein*, 623 F. Supp. 2d at 1239. Mr.

9    Harney no evidence supporting his contention that it will be prohibitively expensive. And while

10   the agreement does require each party to bear its own costs by default, it explicitly states that

11   statutory awards control.[6] And actions under RCW 74.34.200 award costs and fees to a

12   prevailing plaintiff. RCW 74.34.200(3). Thus, this agreement is distinguishable from that in

13   *Hardy*. *See* 2015 WL 13446704, slip op. at 3. Mr. Harney could recover his costs and fees on a

14   statutory basis if he prevails in arbitration. For this reason, he has not shown that arbitration will

15   be prohibitively expensive or that he will be unable to recover his costs.

16       Mr. Harney next says that the agreement is one-sided because of the actions it excludes.

17   (Dkt. No. 15 at 14–15.) Indeed, an agreement with lopsided remedies may be unconscionable.

18   *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1180 (W.D. Wash. 2002). In *Hardy*, for

19   example, eviction actions were excluded. 2015 WL 13446704, slip op. at 4. The defendant

20   effectively reserved for itself the power of the courts while keeping a resident out. *Id.* The court

21   concluded this term was unconscionable. *Id.* Here, Defendant excludes three total actions:

22   evictions, involuntary transfers, and discharges. These, too, are actions that Defendant would

23   pursue against its residents, not vice versa. *Cf. Anderson v. Ghaly*, 930 F.3d 1066, 1071–72 (9th

24

25   ---

26   [6] "*Unless otherwise provided for by state or federal statute*, each party shall bear its own costs
     and fees for the arbitration and shall split the arbitrator's fees equally." (Dkt. No. 12 at 15)
     (emphasis added).

1   Cir. 2019) (explaining transfer and discharge actions by care facilities). As such, *Hardy*'s

2   reasoning applies with greater force to this term: Defendant has reserved its right to pursue three

3   actions in the courts while compelling Mr. Harney to arbitrate actions like this one. *See also*

4   *Zuver*, 103 P.3d at 767 ("The remedies limitation provision blatantly and excessively favors the

5   employer in that it allows the employer alone access to a significant legal recourse."). This non-

6   mutual term is substantively unconscionable.

7           Finally, Mr. Harney says that the confidentiality provision contradicts Washington's

8   policy in favor of transparency. (Dkt. No. 15 at 15.) It requires that "all matters relating to any

9   arbitration shall be confidential, including the existence and subject of the arbitration." (Dkt. No.

10  12 at 15.) The *Hardy* court considered and ultimately agreed with the same argument about a

11  similar term, especially in the context of residential care facilities. 2015 WL 13446704, slip op.

12  at 5 (citing *McKee v. AT&T Corp.*, 191 P.3d 845, 858–59 (Wash. 2008)). For the same reasons,

13  this Court finds the confidentiality term here to be substantively unconscionable.

14          To summarize, two isolated terms here are substantively unconscionable. But when a

15  court can easily sever the unconscionable provisions, it will enforce the remainder. *Compare*

16  *Zuver*, 103 P.3d at 768–69 (two unconscionable terms did not "pervade" the agreement) *with*

17  *Hardy*, 2015 WL 13446704, slip op. at 6 (four unconscionable terms made the agreement wholly

18  unenforceable). This is especially true when the agreement contains a severability clause, (Dkt.

19  No. 12 at 16), which is generally enforced as the parties' intent. *See Zuver*, 103 P.3d at 768

20  (collecting cases). While upwards of six terms were unenforceable in *Hardy*, the two

21  unconscionable terms here—excluding some actions from arbitration and requiring

22  confidentiality—can be severed. Therefore, the rest of the agreement can be enforced, and the

23  parties must be compelled to arbitrate under the FAA and the agreement as modified to sever the

24  terms discussed above.

25  **III.   CONCLUSION**

26          For the foregoing reasons, Defendant's motion to compel arbitration (Dkt. No. 11) is

GRANTED. The arbitration agreement will be modified in accordance with this order and this action is STAYED pending arbitration. The parties are ORDERED to submit a joint status report within fourteen (14) days of the completion of arbitration proceedings.

DATED this 21st day of February 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C24-1844-JCC
PAGE - 8